UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN HAMMONS,

     Plaintiff,

v.

ELEVANCE HEALTH, INC.; and
THE ELEVANCE HEALTH COMPANIES, INC,
p/k/a THE ANTHEM COMPANIES, INC.,

     Defendant.

Case No:
Hon.

---

Greg A Jones (P75318)
**MORGAN & JONES, PLLC**
Attorneys for Plaintiffs
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
P: 248-865-0001
F: 248-865-0002
gjones@work-lawyers.com

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, KAREN HAMMONS, by and through her attorneys, MORGAN & JONES and for her complaint against Defendant, states the following:

1.    This cause of action asserts claims of employment discrimination on the basis of race and age, and retaliation for having opposed the same, in violation of Title VII of the Civil Rights Act of 1964, as amended, the Age

Discrimination in Employment Act ("ADEA"), 29 USC §621 et seq., and the Elliot-Larsen Civil Rights Act, MCL § 37.2101 et seq.

## PARTIES

2.     Plaintiff, KAREN HAMMONS (hereinafter, "HAMMONS"), is a resident of the City of Farmington Hills, County of Oakland, State of Michigan.

3.     HAMMONS is a black female, born in 1957.

4.     Defendant, ELEVANCE HEALTH, INC and THE ELEVANCE HEALTH COMPANIES, INC., (hereinafter collectively, "ELEVANCE") are affiliated entities comprising a corporation previously known as ANTHEM, INC and THE ANTHEM COMPANIES, INC., and are incorporated under the laws of the State of Indiana.

5.     ELEVANCE is a for-profit health insurance provider, providing medical, pharmaceutical, dental, behavioral, health, long-term care, and disability plans through affiliated companies such as Anthem Blue Cross and Blue Shield, Anthem Blue Cross in California, Wellpoint, and Carelon.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §1331 and 1367.

2

7.     This Court has personal jurisdiction over Defendant because it has continuous and systematic operations in the State of Michigan and the discriminatory and retaliatory practices alleged in this Complaint occurred within the State of Michigan.

8.     HAMMONS filed a Charge of Discrimination with the Equal Employment Opportunity Commission on March 19, 2023 which was within 300 days of the events giving rise to her claims. **(Attached as Exhibit A)**

9.     The EEOC issued a notification of the right-to-sue to HAMMONS on or about June 14, 2024.

10.    HAMMONS has filed this complaint within 90 days of receiving the notification of the right-to-sue from the EEOC.

11.    All of the discriminatory and retaliatory practices alleged in this Complaint occurred within the State of Michigan.

12.    Venue is proper and convenient in this judicial circuit.

## **STATEMENT OF FACTS**

13.    ELEVANCE (p/k/a Anthem, Inc.) hired HAMMONS on or about March 5, 2018.

14.    HAMMONS was last employed by ELEVANCE as a Manager II for the THTY Case Management Team.

3

15.    At all times relevant throughout HAMMONS'S tenure with ELEVANCE, HAMMONS demonstrated that she was a capable and qualified employee.

16.    HAMMONS received multiple positive performance reviews, evidencing her qualifications as an ELEVANCE employee.

17.    To wit, HAMMONS earned a "Meets Expectations" overall rating in her 2018 Performance Evaluation, with comments from her manager noting that "[HAMMONS] demonstrate[s] a strong sense of commitment to our IHM members and clients in terms of service delivery. [HAMMONS] care[s] and willing (sic) to go the extra mile in support of our members. You are a profession (sic) and has (sic) a great ability to drive results."

18.    Likewise, HAMMONS earned a "Meets Expectations" overall rating relative to her 2019 Performance Evaluation, with associated comments from her manager noting that "Karen has been able to stabilize the CM team, promote nurses demonstrating exemplary skills, improve the performance of under-performing associates, and hire successful new associates. Karen played a major part in preparing the nurse CM for the Toyota Audit under less than optimal circumstances."

19.    HAMMONS 2020 performance review was no different, which demonstrates an overall rating of "Meets Expectations" and comments such

4

as "Karen's skills have frown (sic) in 2020. She is very strong at recruiting, vetting, and retaining exceptional talent for her Team. This included hiring the HII onsite CM this year. She can efficiently de-escalate members with concerns or complaints. As a whole the Team performed very wel (sic) in 2020 and Exceeds Expectations for PG Performance."

20.    HAMMONS'S 2021 and 2022 performance evaluations also reflect "Meets Expectations" overall ratings, with similarly positive Manager Comments.

## Disparate Treatment From Younger White Colleagues

21.    Despite her consistently positive performance, HAMMONS was treated differently than her younger, white compatriots from her manager Deborah McGinty (hereinafter, "McGINTY.")

22.    Specifically, HAMMONS was limited to a 10% Annual Incentive Plan (AIP) bonus eligibility.

23.    Upon information and belief, each of the other managers under McGINTY's direct supervision had been given AIP eligibility in excess of 10%.

24.    When HAMMONS requested that McGINTY raise her AIP eligibility to a level commensurate with her white counter-parts, McGINTY deflected or refused.

25.    Moreover, McGINTY did not provide the same resources to HAMMONS as she did to the other white managers under her supervision.

26.    For example, McGINTY cut HAMMONS's discretionary bonus budget in half from $40,000.00 to $20,000.00, which significantly limited HAMMONS's ability to incentivize and recognize her direct reports.

27.    At the same time, the discretionary bonus budgets for HAMMONS's white counter-parts were increased.

28.    Specifically, McGINTY routinely failed to recognize or publicly praise HAMMONS'S achievements in the workplace, while frequently offering such recognition and praise to other, younger white Managers.

29.    McGINTY additionally made it more difficult for HAMMONS to succeed by not providing provide the same resources to her as she did to her younger white colleagues.

30.    McGINTY further demonstrated a preference for white employees in evaluations for promotion.

31.    As an example, HAMMONS had consistently recognized the performance of one of her reports, an African American woman in her late 40's, as exceeding expectations. As a result, HAMMONS recommended her for a promotion to Team Leader.

32.    Instead, McGINTY expressed a preference for a younger white employee whose performance reviews were not as favorable as HAMMONS's recommendation.

## Hammons Reports Disparate Treatment to Elevance Human Resources

33.    On or about March 8, 2022, HAMMONS submitted a concern regarding the disparity in her AIP eligibility and the disparate treatment she had been experiencing from McGINTY to ELEVANCE's human resources portal.

34.    Specifically, HAMMONs noted that she was experiencing "ongoing disparities in expectations, including how [she was] being recognized, evaluated and in [her] AIP compensation…"

35.    On or about July 14, 2022 and July 20, 2022, HAMMONS reiterated these concerns telephonically to ELEVANCE employee relations representative, Sonja Henderson.

36.    On or about July 27, 2022, HAMMONS met with Liz Barnett (hereinafter, "BARNETT"), Elevance's Staff Vice President.

37.    HAMMONS informed BARNETT of the disparate treatment that she had received from McGINTY, as summarized herein.

38.    Subsequently, ELEVANCE informed HAMMONS that it had closed her reported concerns without resolution

7

## **Transfer, Retaliatory Discipline and Eventual Termination**

39.     On or about September 12, 2023, HAMMONS was informed that she would no longer report to McGINTY, but would instead her team would now report to Director of Operations, Molly Phillips (hereinafter, "PHILIPS.")

40.     Upon information and belief, PHILLIPS's team has one of the highest attrition rates within the division.

41.     HAMMONS expressed concern to ELEVANCE that her transfer to PHILLIPS's team was not a satisfactory resolution of her complaints, and that she believed the same was motivated by a desire to force her exit from the company.

42.     For example, on or about January 18, 2023, HAMMONS reported to ELEVANCE that PHILLIPS was retaliating against her because of her prior complaints regarding McGINTY.

43.     On or about March 19, 2023, HAMMONS drafted and filed a Charge of Discrimination with the EEOC (hereinafter, "The Charge"), outlining the disparate treatment she had received as it compared to her white counterparts, attached hereto as **Exhibit 1**.

44.     After HAMMONS filed The Charge with the EEOC, ELEVANCE escalated its criticism of her work performance in an effort to create the pretexual justification for her eventual termination.

8

45.    For example, on June 12, 2023, PHILLIPs issued a ticket to ELEVANCE's Associate Relations Resolution Team ("AART") to seek approval to issue an Initial Warning to HAMMONS for alleged deficiencies in her job performance.

46.    However, PHILLIPS's had already made the determination to terminate HAMMONS's employment, prior to seeking approval for an Initial Warning.

47.    On or about June 8, 2023, Jamie Lynch (hereinafter, "LYNCH"), a member of HAMMONS's team, reported ongoing problems caused by PHILLIPS to ELEVANCE human resources.

48.    LYNCH is a white female who is approximately in her 40's.

49.    At that time, LYNCH had recently resigned from her position but felt it necessary to report the problems she had experienced, and the negative treatment directed toward HAMMONS.

50.    In her report, LYNCH described HAMMONS as "wonderful," and expressed concern that PHILLIPS was setting her up for a pretextual termination.

51.    LYNCH described some of the efforts PHILLIPS had made to sabotage HAMMONS, noting that she had prevented her from hiring her own staff, had taken away the ability for her to provide her team with Impact

9

Awards, used one on one conversations against her, and generally appeared to "have it out" for her.

52.   Tellingly, LYNCH also reported that after she resigned, PHILLIPS attempted to get her to remain with the company by suggesting that she could replace HAMMONS.

53.   LYNCH reported that PHILLIPS told her that PHILLIPS was working with BARNETT, and they were "in the process to get things done with the team within the next few weeks."

54.   PHILLIPS further noted that "she had a growth opportunity for [LYNCH] coming up" and that BARNETT had asked her not to share it with her yet, in case a "wrench was thrown into the process."

55.   The above conversation evidences that PHILLIPS had made the determination to terminate HAMMONS and replace her with a younger white employee well before she requested the ability to give HAMMONS an "Initial Warning."

56.   Ultimately, on June 23, 2023, ELEVANCE issued an "Initial Warning" to HAMMONS pursuant to PHILLIP's request.

57.   On August 24, 2023, ELEVANCE terminated HAMMONS employment.

58.   ELEVANCE's purported reason for discipline and subsequent termination of HAMMONS is mere pretext, and is instead motivated by a discriminatory animus on the basis of age and race, and retaliatory animus for having opposed the same.

## COUNT I – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964
### Discrimination on the Basis of Race

59.   Plaintiff realleges and incorporates the allegations of the preceding paragraphs as though fully set forth herein.

60.   At all relevant times, the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*, provides, in relevant part:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because such individual's race… or (2) to limit segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individuals race…

42 U.S.C. §2000e-2(a).

61.   At all relevant times, HAMMONS was an employee of ELEVANCE covered by and within the meaning of Title VII.

62.   At all relevant times, HAMMONS was an employer as that term is defined by and within the meaning of Title VII.

11

63.     ELEVANCE violated HAMMONS's rights under Title VII of the Civil Rights Act of 164, as amended, by including but not limited to, creating a hostile work environment, treating her less favorably than similarly situated white employees, terminating her employment, denying her opportunities for other positions, and otherwise discriminating against HAMMONS with respect to the terms, conditions, and privileges of employment because of her race.

64.     As a direct and proximate result of such violations of HAMMONS's rights by ELEVANCE, HAMMONS has suffered and will continue to suffer damages, including but not limited to loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, mental anguish, emotional distress, extreme humiliation, outrage, and the loss and enjoyment of the ordinary pleasures of life.

## COUNT II – VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT
### *Discrimination on the Basis of Age*

65.     Plaintiff realleges and incorporates the allegations of the preceding paragraphs as though fully set forth herein.

66.     At all relevant times, the Age Discrimination in Employment Act ("ADEA"), 29 USC §621 et seq. provides as follows, in relevant part:

It shall be unlawful for an employer –

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his states as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. §623(a).

67.   At all relevant times, HAMMONS was an employee of ELEVANCE covered by and within the meaning of the ADEA.

68.   At all relevant times, ELEVANCE was an employer as that term is defined by and within the meaning of the ADEA.

69.   ELEVANCE violated HAMMONS's rights under the ADEA by, including but not limited to, creating a hostile work environment, treating her less favorably than similarly situated younger employees, terminating her employment, denying her opportunities for other positions, and otherwise discriminating against HAMMONS with respect to the terms, conditions, and privileges of employment because of her age.

13

70.    As a direct and proximate result of such violations of HAMMONS's rights by ELEVANCE, HAMMONS has suffered and will continue to suffer damages, including but not limited to loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, mental anguish, emotional distress, extreme humiliation, outrage, and the loss and enjoyment of the ordinary pleasures of life.

## COUNT III – VIOLATION OF ELLIOT LARSEN CIVIL RIGHTS ACT
### *Discrimination on the Basis of Race*

71.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

72.    At all times relevant, HAMMONS was an "employee" and ELEVANCE was an "employer" within the meaning of Michigan's Elliot-Larsen Civil Rights Act (hereinafter, "ELCRA"), as amended.

73.    At all times relevant herein, HAMMONS had a right to employment free from discrimination on the basis of her race under the ELCRA.

74.    ELEVANCE violated HAMMONS's rights under the ELCRA by, including but not limited to creating a hostile work environment, treating her less favorably than similarly situated white employees, terminating her employment, denying her opportunities for other positions, and otherwise

14

discriminating against HAMMONS with respect to the terms, conditions, and privileges or employment because of her race.

75.    As a direct and proximate result of such violations of HAMMONS's civil rights by ELEVANCE, HAMMONS has suffered and continues to suffer damages, including but not limited to loss of past and future income and employee benefits, loss of professional reputation, mental anxiety, emotional distress, outrage, humiliation and embarrassment.

## COUNT IV – VIOLATION OF ELLIOT LARSEN CIVIL RIGHTS ACT
### *Discrimination on the Basis of Age*

76.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

77.    At all times relevant herein, HAMMONS had a right to employment free from discrimination on the basis of his age under the ELCRA.

78.    ELEVANCE violated HAMMONS's rights under the ELCRA by, including but not limited to creating a hostile work environment, treating her less favorably than similarly situated white employees, terminating her employment, denying him opportunities for other positions, and otherwise discriminating against HAMMONS with respect to the terms, conditions, and privileges or employment because of his age.

15

79.     As a direct and proximate result of such violations of HAMMONS's civil rights by ELEVANCE, HAMMONS has suffered and continues to suffer damages, including but not limited to loss of past and future income and employee benefits, loss of professional reputation, mental anxiety, emotional distress, outrage, humiliation and embarrassment.

## COUNT V – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964
### *Retaliation*

80.     Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

81.     At all relevant times, the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3, *et seq.*, provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed, any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

42 U.S.C. §2000e-3(a).

82.     As more specifically enumerated herein, HAMMONS engaged in activity protected by Title VII of the Civil Rights Act by, including but not

limited to, opposing discrimination on the basis of her race and filing a charge of discrimination with the EEOC pertaining to the same.

83.     ELEVANCE violated HAMMONS's rights under Title VII by, including but not limited to, creating a hostile work environment, treating her less favorably than similarly situated employees, terminating her employment, denying her opportunities for other positions, and otherwise discriminating against HAMMONS with respect to the terms, conditions, and privileges of employment in retaliation for her having engaged in such protected activity.

84.     As a direct and proximate result of such violations of HAMMONS's rights by ELEVANCE, HAMMONS has suffered and will continue to suffer damages, including but not limited to loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, mental anguish, emotional distress, extreme humiliation, outrage, and the loss and enjoyment of the ordinary pleasures of life.

## COUNT VI – VIOLATION OF ADEA
### _Retaliation_

85.     Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

17

86.    At all relevant times, the Age Discrimination in Employment Act, 29 USC §623(d) provides:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. §623(d).

87.    As more specifically enumerated herein, HAMMONS engaged in activity protected by the ADEA by, including but not limited to, opposing discrimination on the basis of her age, participating in an investigation pertaining to the same complaints, and filing a charge of discrimination with the EEOC.

88.    ELEVANCE violated HAMMONS's rights under the ADEA by, including but not limited to, creating a hostile work environment, treating her less favorably than similarly situated younger employees, terminating her employment, denying her opportunities for other positions, and otherwise discriminating against HAMMONS with respect to the terms, conditions, and privileges of employment in retaliation for her having engaged in such protected activity.

89.    As a direct and proximate result of such violations of HAMMONS's rights by ELEVANCE, HAMMONS has suffered and will continue to suffer damages, including but not limited to loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, mental anguish, emotional distress, extreme humiliation, outrage, and the loss and enjoyment of the ordinary pleasures of life.

## COUNT VII – VIOLATION OF ELLIOT LARSEN CIVIL RIGHTS ACT
### *Retaliation*

90.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

91.    At all times relevant, the ELCRA, MCL §37.2701,  provides as follows:

> Two or more persons shall not conspire to, or a person shall not:
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

92.    As more specifically enumerated herein, HAMMONS engaged in activity protected by ELCRA by, including but not limited to, opposing discrimination on the basis of her age and race, participating in an

investigation pertaining to the same complaints, and filing a charge of discrimination with the EEOC.

93.   Two or more persons, on behalf of ELEVANCE, violated HAMMONS's rights under the ELCRA by, including but not limited to, creating a hostile work environment, treating her less favorably than similarly situated employees, terminating her employment, denying her opportunities for other positions, and otherwise discriminating against HAMMONS with respect to the terms, conditions, and privileges of employment in retaliation for her having engaged in such protected activity.

94.   As a direct and proximate result of such violations of HAMMONS's rights by ELEVANCE, HAMMONS has suffered and will continue to suffer damages, including but not limited to loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, mental anguish, emotional distress, extreme humiliation, outrage, and the loss and enjoyment of the ordinary pleasures of life.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff KAREN HAMMONS, respectfully requests this Honorable Court enter judgment in her favor, and against Defendant ELEVANCE HEALTH, INC for (1) Compensatory Damages in an amount to

be determined by the finder of fact, (2) exemplary and/or punitive damages,

(2) interest and the cost of litigation, including but not limited to reasonable

attorney fees and witness fees.

Respectfully submitted,

MORGAN & JONES,

_____
Greg Jones (P75318)
Attorneys for Plaintiff
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
(248) 865-0001
Dated: September 12, 2024     gjones@work-lawyers.com

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, KAREN HAMMONS, by and through her attorneys, MORGAN

& JONES, hereby demands a trial by jury in this cause.

Respectfully submitted,

MORGAN & JONES,

_____
Greg Jones (P75318)
Attorneys for Plaintiff
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
(248) 865-0001

Dated: September 12, 2024    gjones@work-lawyers.com